220 So.2d 659 (1969)
Martin Ellis BRUMIT, Appellant,
v.
STATE of Florida, Appellee.
No. 68-487.
District Court of Appeal of Florida. Second District.
March 19, 1969.
*660 Walter R. Talley, Public Defender, Bradenton, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Judge.
This is an appeal from a judgment of conviction entered against appellant Martin Ellis Brumit after a jury trial and verdict finding him guilty of a criminal offense.
On November 16, 1960, information charging armed robbery was filed against defendant Brumit and on the following day he pleaded guilty, was adjudged guilty, and was sentenced to 20 years imprisonment. On March 9, 1967, he filed motion under then Rule 1 to vacate the judgment, which motion the Court granted on October 17, 1967. On July 24, 1968, upon his second trial, he was found guilty by a jury and on the same day was adjudged guilty by the Court and sentenced to life imprisonment. It is from this last judgment that this appeal is prosecuted.
At the last trial Brumit refused representation by the Public Defender and elected to defend himself. He voluntarily made himself a witness in his own behalf and his main message to the Court and jury was that at the time of the robbery he was in need of psychiatric help. After conviction and filing of notice of appeal, Brumit has been represented on the appeal by the local Public Defender, appointed for such purpose, who has filed a brief here on behalf of Brumit.
Only two suggestions by counsel are made for our consideration on the merits of the appeal: (1) whether a statement made by Brumit during his own testimony constituted a confession or admission of guilt, and if so, whether its introduction in evidence violated his Constitutional rights, and (2) whether Brumit "sufficiently raised the question of insanity at the time of the alleged crime to have it operate as a defense".
O.W. Albritton, a clerk at the Simple Sam Store in Whitfield Estates, Sarasota, testified that as he was closing the store at 11 P.M. on the night of October 29, 1960, he "turned to lock the door and then when I turned back around a man came around the corner with a pistol in his hand. I begged him not to hurt me and he said, `If you open the door, I won't harm you'. I opened the door and we went back inside". The cash proceeds were customarily kept in a "walk in cooler", and the clerk was forced at gun point to open up the cooler, get a paper sack, transfer the money from a box to the sack, and give it to the robber. "He told me to get back in the cooler and stay there a few minutes and that if I didn't he would shoot me before I could get away. He slammed the door and went out the *661 back door". The clerk was forced to turn over the keys to his car so he could not have transportation. After a few minutes in the cooler the clerk got out and went outside the building "and tried to find the keys and couldn't so I went down to the motel and called the sheriff's department". The money taken amounted to $305.46. Thereafter the clerk identified Brumit twice prior to trial and identified him also during his own testimony. Deputy Sheriff Robert Coller corroborated the previous identification by the clerk.
After Coller's testimony on direct the Court asked Brumit, representing himself, whether he had any questions to ask Coller and he replied "I have no questions. Everything he says is so". After Albritton's testimony on direct the Court asked Brumit the same question and he replied "He told was was so, so I don't have any questions or anything to add". Brumit voluntarily took the stand in his own behalf and made the following brief statement: "The only thing I can add or say to this, has already been said. I might can add that when I entered this mans store, I did everything that he said I did but I'd like to add that I needed help from a psychiatrist, which I didn't know at the time. I have nothing to add to what has already been said".
Most confessions and admissions against interest are extra-judicial. This was a judicial confession. It was voluntarily made in open Court without any compulsion, threats, promises, or other vitiating factor. In fact, the in-Court confession was gratuitous. Certainly, no Constitutional right was violated by Brumit's testimony given of his own violation.
As to the "question of insanity", such issue never arose at the trial. Brumit's allusion to the fact that he "needed help from a psychiatrist" did not suggest insanity as any possible defense. Furthermore, Rule 1.210(b) of the Rules of Criminal Procedure, 33 F.S.A., requires that if a defendant intends "to rely upon the defense of insanity, * * * advance notice of such defense" must be given by the defendant "upon arraignment or prior thereto". No such notice or even intimation thereof was given.
At the inception of the trial, Brumit refused to allow Public Defender Talley to represent him and insisted on representing himself. This he had a right to do. He was sui juris and mentally competent and therefore, under State v. Cappetta, Fla. 1968, 216 So.2d 749, he had a right to handle his own case at trial. He did so and, having so charted his own course, cannot later complain that he landed on an unfriendly shore.
The judgment appealed is affirmed.
Affirmed.
LILES, C.J., and MANN, J., concur.