564 A.2d 90

**Edward C. CLARK**

v.

**STATE of Maryland.**

**No. 90, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Oct. 2, 1989.

Clarence W. Sharp, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before ROBERT M. BELL, WENNER and
FISCHER, JJ.

ROBERT M. BELL, Judge.

■ The only question we need address on this appeal
from the judgment of the Circuit Court for Baltimore City
is:

Did the trial court err in refusing to instruct the jury as
to the dispositional consequences of a verdict of not
criminally responsible? [1]

Consistent with the teachings of *Erdman v. State*, 315 Md.
46, 553 A.2d 244 (1989), *rev'g*, 75 Md.App. 560, 542 A.2d 399
(1988), we answer that question in the affirmative and, so,
reverse appellant's conviction and remand for new trial.

Since the sole issue with which we are here concerned is
the trial court's refusal to grant a jury instruction, we need
only focus upon those facts, largely procedural, which place
that decision in context. Hence, our recitation of the facts
will be brief. Edward Clark, appellant, was charged with
various counts of attempted murder, armed robbery, use of
a handgun in the commission of a crime of violence, and
related offenses. He entered pleas of not guilty and not

---

**1.** Two additional questions were posed for resolution on this appeal,
namely:

Did the trial court's intervention in the questioning of appellant's
mother at the conclusion of cross-examination deny him a fair and
impartial trial and due process of law?
and
Did the trial court err in reinstructing the jury on the limited point
that murder in the second degree is not a specific intent crime and
therefore voluntary intoxification could not serve as a defense
thereto?

We find it unnecessary to address either of these questions inasmuch
as they are not likely to arise on retrial. Insofar as the trial judge's
participation in the trial is concerned, we simply refer the trial court
to the recent cases addressing the proper limits of such involvement.
*See, e.g., Pearlstein v. State*, 76 Md.App. 507, 514, 547 A.2d 645 (1988);
*Ferrell v. State*, 73 Md.App. 627, 643, 536 A.2d 99, *cert. granted*, 312
Md. 427, 540 A.2d 489 (1988); *Cardin v. State*, 73 Md.App. 200, 228,
533 A.2d 928 (1987), *cert. denied*, 312 Md. 126, 538 A.2d 777, *cert.
denied*, —— U.S. ——, 109 S.Ct. 78, 102 L.Ed.2d 55 (1988); *Smith v.
State*, 66 Md.App. 603, 610, 505 A.2d 564 (1986).

criminally responsible. *See* Md. Rule 4–242(a)[2] and Md. Health–Gen'l Code Ann. § 12–109(a)(1).[3] The case proceeded to trial before a jury.

At the close of the evidence, but before the jury was instructed, appellant submitted the following instruction, with the request that the jury be so instructed:

26A *Effect of a Finding of Not Criminally Responsible By Reason of Insanity*

Ladies and gentlemen, of the jury you are entitled to know the legal effect of your verdict in this case. Keep in mind, at all times, that your decision should be based solely upon the evidence that you have heard.

You, of course, are aware of the consequences of a verdict, reached by you, ladies and gentlemen of the jury, of guilty or not guilty, but a verdict of not criminally responsible by reason of insanity may not have such a commonly understood meaning.

If Edward Clark, the Defendant is found not criminally responsible by reason of insanity, the Court has the authority to commit the Defendant to the Department of Health and Mental Hygiene for institutional, in-patient care and treatment. His commitment is for a period of time wherein his behavior is monitored by the institutional staff. When the Defendant is viewed by the staff that he is not a danger to himself or to the person or property of others, he is then entitled to a hearing within the institution. The burden of proof is with the committed individual to establish by a preponderance of the evidence

---

**2.** "A defendant may plead not guilty, guilty, or, with the consent of the court, nolo contendere. In addition to any of these pleas, the defendant may interpose the defense of insanity as permitted by law."

**3.** (a) *Time and manner of pleading.—*
(1) If a defendant intends to rely on a plea of not criminally responsible, the defendant or defense counsel shall file a written plea alleging, in substance, that when the alleged crime was committed, the defendant was not criminally responsible by reason of insanity under the test for criminal responsibility....
Appellant's compliance with this statute is not an issue on this appeal.

that he is not a danger to himself or to the person or property of others if discharged or released from confinement within the conditions imposed by the Court. The findings and recommendations of the Board are then forwarded to the Court for the final determination of whether the Defendant should remain committed; be conditionally released; or be discharged from commitment. It is this Court, then, that makes the final determination [of] whether or not he is to be released.

When the court's instructions neither contained appellant's requested instruction on criminal responsibility nor fairly covered it, appellant excepted. The court overruled the exception, explaining:

Counsel have correctly stated that there were lengthy discussions in reference to this issue on this particular instruction in chambers. There is no Maryland law allowing such instruction or approving such an instruction. The legislative history, as Ms. Nathan has articulated, is correct. The Court believes that this would be the province of the Court and not the jury and therefore the requested instruction is denied and the defense's exception noted for the record.

It is obvious, from the foregoing, that the court's rationale for refusing to instruct the jury as appellant requested was its belief that the jury was not entitled to such an instruction. The court did not express any view concerning the correctness of the requested instruction.[4]

In *Erdman,* the court was presented with the identical issue presented here, whether it is required, when a defendant has pled not criminally responsible, to instruct the jury of the consequences of that plea. Erdman requested the following instruction:

---

4. So far as the record reflects, the State did not challenge the correctness of the jury instruction either. The State's position was simply that the jury had no need to know the consequences of a not criminally responsible plea.

If the defendant is found not criminally responsible, the court will commit the defendant to the Department of Health and Mental Hygiene for institutional in-patient care. In the future, the defendant will be entitled to [be] release[d] from custody of the Department of Health and Mental Hygiene only if this court or a jury finds he will not be a danger to himself or the person or property of another.

75 Md.App. at 563, 542 A.2d 399. Being "uncomfortable with the possibility that the verdict will be tainted to the prejudice of the defendant by what the jury *has been told* about the defendant's responsibility, without information as to his position as prescribed by law" (emphasis in original), the Court of Appeals reversed our affirmance of the trial court's refusal to so instruct the jury. By way of explanation, the Court noted that the jury was extensively instructed concerning the plea of not criminally responsible and its responsibility to make that determination. It then pointed out:

The word "responsible" stood naked before the jury. The jury received no indication whatsoever by way of court proceedings as to what happens to a defendant found to be not criminally responsible for his criminal conduct. The curtain was drawn on that matter and no light seeped through officially. All the jury had before it was the test for its determination whether the defendant was "responsible" or not. There was no suggestion as to what effect a finding of not criminally responsible would have. The common meaning of "responsible" is "likely to be called upon to answer (a man is [responsible] for his acts)." *Webster's 3rd New International Dictionary of the English Language Unabridged.* Or as *Webster* also defines it, "chargeable with the result." It follows that if one is not responsible he is not likely to be called upon to answer for his acts or chargeable with their result. This leads to a reasonable connotation that a defendant found to be not responsible for his criminal conduct will walk

out of the courtroom, not only unpunished but free of any restraint.

315 Md. at 57, 553 A.2d 244. The Court went on to observe that "the instruction is to be given only when duly requested by the defendant," 315 Md. at 58, 553 A.2d 244, and that, agreeing with the Court of Special Appeals, "[i]n the circumstances of this case", the instruction requested by appellant was sufficient. *Id.*, at 59, 553 A.2d 244. The Court cautioned that "[a] recitation of the statutory procedure in great detail, such as reading the entire section of the statute, would tend to increase confusion." *Id.*, quoting *Lyles v. United States*, 254 F.2d 725, 728 (D.C.Cir.1957), *cert. denied*, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958).

As was the case in *Erdman*, the trial court's instructions apprised the jury of the plea of not criminally responsible. It also, as it was required to do, set out the test for criminal responsibility and the jury's responsibility to determine appellant's criminal responsibility for the commission of the crimes with which he was charged. Appellant, for his part, like Erdman, seasonably requested an instruction concerning the consequences of a plea of not criminally responsible and, when the court's instructions failed to cover the subject, timely objected. The content of the instruction requested by appellant and that requested by Erdman (and, incidentally, found by the Court of Appeals to be sufficient) differs to a significant extent. It is this difference in content which presents the only possible basis for contending that the result in this case should be different than that reached in *Erdman*.

While conceding that the court must give a proper instruction on the consequences of a not criminally responsible verdict, when duly requested, the State is quick to point out that *Erdman* did not specify what constitutes a proper instruction. Accordingly, the State contends that the instruction requested by appellant misstated the law in several important respects and, consequently, was not a "proper" instruction. Since, it argues, unless a requested

instruction correctly states the law it need not be given, *Mack v. State,* 300 Md. 583, 592, 479 A.2d 1344 (1984), and a court's refusal to give an instruction, a portion of which is incorrect, is not reversible error, *Foster, Evans, Huffington v. State,* 305 Md. 306, 317, 503 A.2d 1326, *cert. denied,* 478 U.S. 1010, 1023, 106 S.Ct. 3310, 3315, 92 L.Ed.2d 723 (1986), the court was right, *albeit* for the wrong reason. *See Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).[5]

■ As we have seen, appellant timely requested an instruction on the consequences of a verdict of not criminally responsible and timely excepted to the court's failure to give such an instruction. If we assume, as the State argues, that the requested instruction contained misstate-

---

5. In support of its argument that appellant's instruction "seeks to minimize the possibility that [appellant] could be released in relatively short order if committed to the Department of Mental Health and Hygiene," the State identified three particulars in which it contends the proposed instruction is defective:

   1. It inaccurately characterizes the court's authority to commit an individual found not criminally responsible to be discretionary;

   2. It fails to mention the conditions under which an immediate commitment of a defendant found not criminally responsible would not be required; and

   3. It implies that a release hearing will be held only after the institutional staff has determined that a defendant is no longer dangerous.

There appears to be some merit in the State's position. With regard to the first alleged defect, the Court of Appeals characterized our statute as placing Maryland "in the category of those jurisdictions which mandate commitment." 315 Md. 46, 553 A.2d 244. To the extent, therefore, that the language, "has the authority to commit", implies discretion on the part of the court, it is misleading. When the instruction states that the court has only discretionary authority to commit a defendant, failure to mention the conditions under which commitment is not required may also be considered to be misleading. Finally, a case could be made for the State's position concerning when release hearings will be held. Of course, and this is the bottom line, the complaints made by the State vis-a-vis the accuracy of the requested instruction simply underscore and emphasize the point made by the Court of Appeals, that "a recitation of the statutory procedure in great detail, such as reading the entire section of the statute, would tend to increase confusion." *Erdman,* 315 Md. at 59, 553 A.2d 244.

ments or was misleading, and, thus, was not an absolutely correct statement of the law, the State's argument presents squarely the question whether it is the court, rather than the parties, which must determine what is an accurate statement of the law. Stated another way, we must determine whether, the trial judge must submit a "correct" instruction to the jury when a defendant's requested jury instruction on a proper subject for instruction is arguably erroneous in some particular, or whether he or she may refuse to submit "any" instruction on that subject. We hold that the court must instruct the jury on a matter which is a proper subject for instructions where a timely request has been made even though that request is not totally accurate and may contain some erroneous material. To hold otherwise would be to place on the parties the responsibility for determining what the law is, a responsibility which is properly entrusted to the court. *See Gooch v. State,* 34 Md.App. 331, 367 A.2d 90 (1976), *cert. denied,* 280 Md. 735 (1977); *Braxton v. State,* 11 Md.App. 435, 274 A.2d 647, *cert. denied,* 262 Md. 745 (1971).

In *Gooch,* after the court had instructed the jury, defense counsel asked the court to give an instruction that "evidence of a good character itself can be enough to raise reasonable doubt". 34 Md.App. at 334, 367 A.2d 90. The court refused, stating, that the instruction would be out of context if given after it had already instructed the jury and secondly that it was not aware of any authority for the proposition that character evidence standing alone could raise a reasonable doubt. *Id.,* 34 Md.App. at 335, 367 A.2d 90. We reversed. In so doing, we observed:

> We hasten to add that we do not accept or reject as a correct statement of the law the instruction so vigorously argued by appellant in his brief. Our very careful reading of the record indicates that the precise instruction argued in the brief was never offered before the trial court. Without ruling on its validity, we express our doubts as to whether the excision of one sentence from a previously approved complete charge and its inclusion as

a part of a general proposed instruction in a textbook is sufficient authority to require its acceptance as an appropriate advisory jury instruction. *It is the duty of the trial court to make the initial decision as to the form and content of the advisory instruction and where the request for instruction is technically erroneous, to include a correct instruction in the court's charge. Noel v. State,* [202 Md. 247] at 252 [96 A.2d 7]; *Colbert v. United States,* 146 F.2d 10 (D.C.Cir.1944). (Footnotes omitted, emphasis added)

34 Md.App. at 336–37, 367 A.2d 90. *Braxton* is to the same effect. There, the defendant asked the court to give the following instruction on the significance of character evidence:

The Court instructs the jury that relative to the testimony pertaining to the character of one of the defendants in respect to those traits of character which ordinarily would be involved in the commission of a crime like that charged in this case, I would instruct you as follows: Such evidence of good character is regarded as relevant to the question whether the defendant is innocent or guilty of the crime charged, because the jury may, if its judgment so directs, reason that it is improbable that a person of good character in such respects would have conducted himself as alleged.

11 Md.App. at 438, 274 A.2d 647. The court refused to give any character evidence instruction. Because evidence of the defendant's character had come into evidence, without objection, we determined that although he was not entitled to the overbroad instruction he requested, the defendant was entitled to an instruction on character testimony. To underscore this point, we set forth what we concluded the jury should have been instructed:

We think that Braxton, having requested an instruction with respect to the evidence of his good character, was entitled to an instruction that the evidence should be taken into consideration by the jury in connection with all the other evidence in the case and, in arriving at their

> verdict of guilt or innocence, given such weight under all the facts and circumstances of the case, including credibility, as determined by the jury, of the witness testifying as to Braxton's reputation, as it merits in the judgment of the jury.

11 Md.App. at 442, 274 A.2d 647. Thus, although technically erroneous, we held that appellant was nevertheless entitled to a correct instruction on character testimony.

Reference to Maryland Rule 4–325(c) further emphasizes the point. That Rule provides:

> The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

We think it significant that the Rule requires the court to "instruct the jury as to the applicable law" when requested to do so by a party; it does not specify that the court must instruct the jury as to the applicable law only upon request of a party by means of a proposed instruction which correctly states the law.

Moreover, to interpret the Rule as requiring a party desiring an instruction to submit a suggested one which contains a correct statement of the law could lead to anomalous and absurd results. Consider the following scenario. The evidence in a case would support the giving of an instruction on a subject of some importance in the case and which both parties agree should be given. Unfortunately, neither of the proposed instructions submitted by the parties is a technically correct statement of the law on the subject. Under the State's argument, notwithstanding the importance of the issue, hence, the desirability of instructing the jury on it, and the fact that both parties requested an instruction on the point, the court would not have to give *any* instruction. Such a result is untenable. We are per-

suaded that the law is otherwise; it is as enunciated in *Gooch* and *Braxton*.

JUDGMENT REVERSED; CASE REMANDED FOR NEW TRIAL[6]

COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.

6.  Unlike in *McCloud v. State*, 317 Md. 360, 564 A.2d 72 (1989), appellant did not concede his guilt of the crimes charged. Indeed, he raised on appeal issues, affecting the merits of the case which we did not have to reach. Finally, the court's failure to instruct as to the consequences of a finding of not criminally responsible left only two "comprehensible" alternatives available to the jury: guilty or not guilty. A correct instruction on the point may itself have had a bearing on the jury's verdict. For those reasons, we conclude *McCloud* does not mandate that the new trial be limited to the question of criminal responsibility.